UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| **Sandra Jean Davidson, Trustee for the Heirs and Next of Kin of Nicholas Ross Davidson,**<br><br>    Plaintiff,<br><br>vs.<br><br>**Hennepin County;**<br><br>**Hennepin Healthcare System, Inc.;**<br><br>**Corrections Deputy Kaydian Hyatt, Corrections Deputy Emmanuel Davis, Corrections Deputy Travis Thorson, Corrections Deputy Jacelyn Deal, Corrections Deputy Eder, and Corrections Deputy Johnson, Hennepin County employees, all in their individual and official capacities and as agents/employees of Hennepin County;**<br><br>**Lewis H. Simpler, APRN, Kay P. Willis, RN, Ebrima Dem, RN, Roselene Omweri, RN, Paris Marshall, LPN, Mary Jean Bade, LPN, and Deyonna Taylor, RN, Hennepin County and/or Hennepin Healthcare System, Inc. employees, all in their individual and official capacities and as agents/employees of Hennepin County and/or Hennepin Healthcare System, Inc.,**<br><br>    Defendants. | Court File No.<br><br>**COMPLAINT WITH JURY DEMAND** |

1

## INTRODUCTION

For her Complaint, Sandra Jean Davidson, in her capacity as Trustee for the heirs and next of kin of Nicholas Ross Davidson, states and alleges as follows:

1. This is an action for money damages arising out of the March 23, 2022 in-custody death of Nicholas Ross Davidson, which resulted from violations of well-settled federal civil rights and state law.

2. By order dated January 10, 2025, Hennepin County District Court appointed Sandra Jean Davidson ("Plaintiff") as Trustee for the Heirs and Next of Kin of Nicholas Ross Davidson.

3. It is alleged that the individual Defendants violated Mr. Davidson's constitutional rights under 42 U.S.C. §§ 1983, and the Eighth and/or Fourteenth Amendments to the United States Constitution and engaged in negligence and medical malpractice leading to wrongful death.

## JURISDICTION

4. Jurisdiction is based upon 28 U.S.C. §§ 1331 and 1343, and on the pendent jurisdiction of this Court to entertain claims arising under state law pursuant to 28 U.S.C. § 1367.

## VENUE

5. This Court is the proper venue for this proceeding under 28 U.S.C. § 1391, as the material events and occurrences giving rise to Plaintiff's cause of action occurred within the State of Minnesota.

## PARTIES

6. Decedent Nicholas Ross Davidson ("Mr. Davidson") was at all material times a resident of the State of Minnesota and of full age and an inmate at the Hennepin County Jail in Minneapolis, Minnesota.

7. Plaintiff Sandra Jean Davidson is Mr. Davidson's biological mother and has been appointed as Trustee for the heirs and next of kin for Nicholas Ross Davidson pursuant to Minn. Stat. § 573.02.

8. Defendant Hennepin County is a municipal corporation and the public employer of all individually named Defendants. Defendant Hennepin County is sued directly and also on the theories of respondeat superior or vicarious liability and pursuant to Minn. Stat. § 466.02, for the actions of its officers and officials.

9. Defendant Hennepin Healthcare System, Inc., also known as Hennepin Healthcare, formerly Hennepin County Medical Center, is a subsidiary corporation of Hennepin County and the public employer of the individually named medical staff Defendants. Defendant Hennepin Healthcare System, Inc., is sued directly and also on the theories of respondeat superior or vicarious liability and pursuant to Minn. Stat. § 466.02, for the actions of its employees and officials.

10. Defendants Hyatt, Davis, Thorson, Deal, Eder, Johnson, Simpler, Willis, Dem, Omweri, Marshall, Bade, and Taylor, all sued in their individual, official, and employee/agent capacities, were at all times relevant to this complaint duly appointed and acting officials/employees of Defendant Hennepin County and/or Hennepin Healthcare System, Inc., acting under color of law, to wit, under color of the statutes, ordinances, regulations, policies, customs and usages of the State of Minnesota and/or Hennepin County. These Defendants may be referred to below as "individual Hennepin County Defendants."

**FACTS**

11. On March 18, 2022, decedent Mr. Davidson was arrested by Richfield police and taken to Hennepin County Jail. During the intake process, Mr. Davidson was seen for a medical

assessment. This assessment included an evaluation for the use of alcohol and drugs. Mr. Davidson came into the jail intoxicated and he revealed that he was a heavy drinker who drank alcohol daily. In addition to alcoholism, Mr. Davidson had fallen three days prior to his arrest and had a wound with seven staples in his scalp. The nurse who assessed Mr. Davidson ordered regular wound checks and CIWA[1] assessments in the jail.

12. CIWA assessments are a series of ten questions designed to evaluate the presence and seriousness of complications related to acute alcohol withdrawal syndrome.[2] Acute alcohol withdrawal can cause significant illness and death. Therefore, monitoring and treating the symptoms of acute alcohol withdrawal within jails and other institutions is essential.

13. CIWA assessment provides a systematic way to monitor acute alcohol withdrawal symptoms and complications and is paired with an acute alcohol withdrawal treatment protocol. To be effective, CIWA assessments are performed by nurses at least once per shift but more often if the individual is experiencing significant symptoms that require adjustment of the treatment protocol. Depending on the CIWA score, as set forth below, treatment and accepted standard of care involves monitoring and correcting electrolyte imbalances, maintaining hydration, and administering benzodiazepines or other medications.[3]

| CIWA Scoring | | |
|---|---|---|
| **Score** | **Interpretation** | **Clinical Implication** |
| 0-10 | Mild withdrawal | Monitor--may not require medication |
| 11-15 | Moderate withdrawal | Needs benzodiazepine medication |
| 16-20 | Severe withdrawal | Needs hospitalization and intensive medical management |
| 21+ | Very severe withdrawal | Requires immediate medical attention to prevent life-threatening complications |

---

[1] CIWA stands for Clinical Institute Withdrawal Assessment for Alcohol. https://pmc.ncbi.nlm.nih.gov/articles/PMC5597013/
[2] Complications of Alcohol Withdrawal, https://pmc.ncbi.nlm.nih.gov/articles/PMC6761825/
[3] Alcohol Withdrawal Syndrome. https://www.aafp.org/pubs/afp/issues/2004/0315/p1443.html

14. On March 18, 2022 at 9:38 pm, approximately seven hours after being admitted to the jail, Mr. Davidson received his first CIWA assessment by Defendant Nurse Willis. He was experiencing shaking, nausea, headache, hand tremors, bright red skin and his heart rate was very rapid at 134.[4] His CIWA score was 14. Nurse Willis gave Mr. Davidson a dose of Valium, a benzodiazepine, and ordered his vital signs to be rechecked in one hour.

15. At 10:39 pm, Mr. Davidson's vital signs were rechecked. He was experiencing mild nausea, anxiety, and moderate tremor of his hands. His heart rate was still elevated at 125. Nurse Willis scored his CIWA as 10 and ordered Mr. Davidson's vital signs to be rechecked in an hour. However, neither Nurse Willis or any other health care provider saw Mr. Davidson during the rest of that night.

16. On March 19, 2022, Mr. Davidson was abandoned by medical staff as no health care provider saw Mr. Davidson for the entire day. He received no wound care, no CIWA assessment and his vital signs were not measured.

17. On March 20, 2022 at 10:05 am, Defendant Nurse Dem checked Mr. Davidson's scalp wound but did not perform a CIWA assessment or measure his vital signs. She noted that Mr. Davidson was limping from a previous fall on the ice and advised him to submit a request for medical services if needed. No other healthcare provider performed a CIWA assessment, measured his vital signs or otherwise saw Mr. Davidson for the rest of that day.

18. On March 21, 2022 at 11:27 am, Defendant Nurse Omweri reported that Mr. Davidson declined a wound check. Nurse Omweri did not perform a CIWA assessment or measure Mr. Davidson's vital signs.

19. Later that day, at 3:10 pm, Defendant Simpler, APRN, reviewed Mr. Davidson's records and placed an order for the staples in his scalp wound to be removed on March 22, 2022. Nurse

---

[4] Normal range for pulse is 60-100. https://my.clevelandclinic.org/health/diagnostics/heart-rate

5

Simpler did not address the failure of the nursing staff to perform regular CIWA assessments or the lack of follow up on Mr. Davidson's abnormal vital signs.

20. On March 22, 2022 at 2:03 am, Defendant Nurse Marshall saw Mr. Davidson because he had fallen off the toilet in his cell. He was on the floor when she arrived. She saw that he had vomited in the sink. He reported that his muscles were very weak and had "never been this bad before." He had moderate tremors in both hands. His pulse was very rapid at 138. She performed a CIWA assessment that resulted in a score of 15, the upper end of moderate withdrawal. She administered a dose of Valium but provided no other care to address his worsening symptoms. She directed the correctional deputies to place a mattress on the floor and to assist Mr. Davidson onto it. She told correctional staff that she was concerned about Mr. Davidson and would check on him again later but she never did.

21. At 9:36 am on March 22, 2022, Defendant Nurse Bade saw Mr. Davidson for a wound check. He was sitting on the floor. She noted that he was alert and oriented as to person, place and time. However, she did not measure his vital signs or ensure that he received a CIWA assessment. No other health care staff measured his vital signs that day or performed a CIWA assessment.

22. At 10:07 am on March 22, 2022, Defendant Deputy Johnson noted that Mr. Davidson was not able to get up from the floor to get into a wheelchair to take his hour out of his cell. Yet, Deputy Johnson did not report this to medical staff or request their help.

23. On March 23, 2022 at 3:20 am, Defendant Deputy Eder performed a wellness check on Mr. Davidson and found that his cell smelled strongly of feces. Mr. Davidson was lying on the floor naked, unable to get up. He had diarrhea and had attempted to clean himself and his uniform with water from the toilet. Deputy Eder did not notify jail medical staff of this new

symptom or request that Mr. Davidson be medically assessed. Instead, Mr. Davidson was moved to a new cell.

24. On March 23, 2022 at 11:34 am, Defendant Nurse Taylor performed wound care on Mr. Davidson's scalp wound. She did not perform a CIWA assessment, although she noted that he had 1+ edema (swelling) in his lower and upper extremities. She measured his vital signs and found his blood pressure to be 180/120, a hypertensive crisis that necessitated Mr. Davidson being sent to the emergency room immediately to save his life. However, Nurse Taylor did not send him to the emergency room. She did not even contact a more advanced caregiver for instructions. Instead, she added Mr. Davidson to a list to be seen by a doctor at some undetermined point in the future and left Mr. Davidson suffering in his cell.

25. Throughout the day on March 23, 2022, between 10:32 am and 12:15 pm, Defendant Deputies Hyatt, Davis, Thorson and Deal performed wellness checks on Mr. Davidson and the other inmates in their quadrant. Although Mr. Davidson remained on the floor, unable to get up, and experiencing an obvious and acute life-threatening medical emergency, none of the Defendants contacted jail medical staff until approximately 12:35 pm.

26. Specifically, at 12:15 pm on March 23, 2022, Defendant Deputy Hyatt observed Mr. Davidson lying on his side on the floor of his cell with his head on his mattress. Instead of calling for medical care for Mr. Davidson, she completed the rest of her wellness checks. Finally, at 12:35 pm during her next round of wellness check, she saw Mr. Davidson in the same position and knocked on his cell door. When she got no response, she opened the cell door and called over her coworker, Deputy Davis. Only then did she call for medical help for Mr. Davidson by calling Nurse Taylor and calling a Code 3 (medical emergency) to Mr. Davidson's cell.

27. Defendant Nurse Taylor arrived and found Mr. Davidson on the floor on his side, with his head on the mattress and a large volume of coffee-grounds blood on the mattress and the floor. Several nurses and correctional deputies responded to the Code 3. EMS was also called. After arriving and taking over care for Mr. Davidson, EMS consulted with physicians and declared Mr. Davidson deceased at 1:38 pm.

28. An autopsy of Mr. Davidson showed that he suffered from chronic alcoholism and was experiencing acute alcohol withdrawal with dehydration and hyponatremia (low sodium in the blood). His vitreous beta hydroxybutyrate level, at 0.98 mmol/L, was more than three times the normal range of 0.02-0.27, indicating that Mr. Davidson likely died from alcoholic ketoacidosis resulting from undertreatment of his alcohol withdrawal syndrome.[5]

29. Had the individual medical and correctional staff Defendants properly monitored Mr. Davidson's deteriorating condition, alcohol withdrawal symptoms and vital signs, and had they appropriately acted on his worsening symptoms, Mr. Davidson would have been taken to the ER where his condition would be evaluated and where he would have been treated for dehydration and hyponatremia, alcohol withdrawal syndrome emergency, and his hypertensive crisis. Had the individual medical and correctional staff Defendants properly monitored and acted on Mr. Davidson's deteriorating condition, alcohol withdrawal symptoms and abnormal vital signs, Mr. Davidson would have received necessary medical treatment and would have survived his medical illness.

30. An investigation conducted by the Minnesota Department of Corrections revealed that Hennepin County and its staff violated Minnesota state law in its care and detention of Mr. Davidson:

---

[5] Alcoholic Ketoacidosis. https://www.ncbi.nlm.nih.gov/books/NBK430922/

a. Hennepin County and its staff failed to complete a mental health screen for Mr. Davidson as was required under Minnesota state law;

b. Hennepin County and it staff failed to obtain documentation signed by Mr. Davidson stating that he had completed jail orientation as was required under Minnesota state law;

c. Hennepin County and its staff failed to obtain a signed release of information from Mr. Davidson during intake as was required under Minnesota state law.

Plaintiff submits that Defendants' breaches of Minnesota state law in their care and detention of Mr. Davidson caused and contributed to Mr. Davidson's death.

31. As a direct and proximate result of Defendants' actions, Mr. Davidson's medical needs were neglected, his life-threatening medical emergency was ignored, and he was abandoned to die on the jail floor with inadequate medical care. As a direct and proximate result of Defendants' actions, Mr. Davidson suffered wrongful death and his heirs and next of kin suffered damages enumerated in Minn. Stat. § 573.02, in an amount in excess of $75,000.

## CLAIMS FOR RELIEF

**COUNT 1: 42 U.S.C. § 1983 – EIGHTH AND/OR FOURTEENTH AMENDMENT DELIBERATE INDIFFERENCE VIOLATIONS AGAINST DEFENDANTS HYATT, DAVIS, THORSON, DEAL, EDER, JOHNSON, SIMPLER, WILLIS, DEM, OMWERI, MARSHALL, BADE, AND TAYLOR IN THEIR INDIVIDUAL CAPACITIES**

32. Paragraphs 1 through 31 are incorporated herein by reference as though fully set forth.

33. Based on the above factual allegations, Defendants, through their actions, acting under the color of state law, violated Mr. Davidson's constitutional rights under the Eighth and/or Fourteenth Amendments to the United States Constitution through their deliberate indifference towards Mr. Davidson's serious medical needs and the serious risk of injury/death to Mr. Davidson.

34. Specifically, Defendants Hyatt, Davis, Thorson, Deal, Eder, Johnson failed in their duty to recognize Mr. Davidson's obviously deteriorating condition during their wellness checks and failed to request medical care for him before he became unresponsive.

35. Defendants Simpler, Willis, Dem, Omweri, Marshall, Bade, and Taylor all knew from his jail admission that Mr. Davidson suffered from alcoholism, drank alcohol daily, and was experiencing acute alcohol withdrawal. They knew that Mr. Davidson was to receive regular CIWA assessments and care for alcohol withdrawal syndrome. These Defendants failed to properly monitor and treat Mr. Davidson's alcohol withdrawal syndrome including failing to regularly perform CIWA assessments and measure his vital signs. They also failed to act on Mr. Davidson's abnormal vital signs and abandoned him on the jail floor while he was experiencing severe alcohol withdrawal symptoms including acute hypertensive crisis.

36. As a result of these constitutional violations, Mr. Davidson and his heirs and next of kin suffered damages as aforesaid.

### COUNT 2: 42 U.S.C. § 1983 – EIGHTH AND/OR FOURTEENTH AMENDMENT (*MONELL*) VIOLATIONS AGAINST DEFENDANTS HENNEPIN COUNTY, HENNEPIN HEALTHCARE SYSTEM, INC., AND THE INDIVIDUAL DEFENDANTS IN THEIR OFFICIAL CAPACITIES

37. Paragraphs 1 through 31 are incorporated herein by reference as though fully set forth.

38. Prior to March 23, 2022, Defendants developed and maintained policies and/or customs and/or practices exhibiting deliberate indifference to the constitutional rights of persons in their care and custody, which caused the violations of Mr. Davidson's constitutional rights.

39. It was the policy and/or custom and/or practice of Defendants to inadequately supervise and train their employees, including the individual Defendants, thereby failing to adequately prevent and discourage further constitutional violations.

40. It was the policy and/or custom and/or practice of Defendants to fail to provide adequate medical care to inmates, including those experiencing acute alcohol withdrawal.

41. It was the policy and/or custom and/or practice of Defendants to fail to administer appropriate CIWA protocol for inmates experiencing acute alcohol withdrawal.

42. It was the policy and/or custom and/or practice of Defendants to provide inadequate medical care for inmates exhibiting life-threatening vital signs and experiencing an acute hypertensive crisis.

43. It was the policy and/or custom and/or practice of Defendants to fail to train their employees, including the individual Defendants, on the proper CIWA protocol for jail inmates.

44. It was the policy and/or custom and/or practice of Defendants to fail to train their employees, including the individual Defendants, on the appropriate response for inmates experiencing alcohol withdrawal syndrome.

45. It was the policy and/or custom and/or practice of Defendants to fail to train their employees, including the individual Defendants, on the appropriate response for inmates experiencing life-threatening medical emergencies.

46. It was the policy and/or custom and/or practice of Defendants to fail to train their employees, including the individual Defendants, on the appropriate response for inmates experiencing a hypertensive crisis.

47. As a result of these policies and/or customs and/or practices and/or lack of training, employees of Defendants, including the individual Defendants named herein, believed that their actions would not be properly monitored by supervisory employees and that misconduct would not be investigated or sanctioned, but would be tolerated.

48. As a result of these policies and/or customs and/or practices and/or lack of training, employees of Defendants, including the individual Defendants named herein, were not properly equipped to care for inmates with alcohol withdrawal syndrome.

49. These policies and/or customs and/or practices and/or lack of training and supervision were the cause of the violations of Mr. Davidson's constitutional rights alleged herein.

50. As a result of these constitutional violations, Mr. Davidson and his heirs and next of kin suffered damages as aforesaid.

### COUNT 3: MINN. STAT. § 573.02 – WRONGFUL DEATH CLAIM AGAINST HENNEPIN COUNTY AND DEFENDANTS HYATT, DAVIS, THORSON, DEAL, EDER, AND JOHNSON

51. Paragraphs 1 through 31 are incorporated herein by reference as though fully set forth.

52. Based on the above factual allegations, Defendants negligently caused Mr. Davidson's death. Specifically, Defendants owed Mr. Davidson a duty and standard of care to recognize and call for medical care as Mr. Davidson's condition deteriorated. Defendants also owed Mr. Davidson a duty and standard of care to complete a mental health screening during intake and ensure Mr. Davidson read and understood the inmate orientation information, which contains details about seeking medical care while in custody. Defendants breached and departed from these duties and standards of care.

53. Defendants caused Mr. Davidson's wrongful death through their deliberate indifference towards his serious medical needs (as alleged in Counts 1 and 2 above) and/or negligence (as alleged in the preceding paragraph).

54. Defendant Hennepin County is vicariously liable for the wrongful death caused by its employees/agents, the individual correctional staff Defendants named herein.

55. As a direct and proximate result of Mr. Davidson's wrongful death, Mr. Davidson's heirs and next of kin have suffered damages enumerated in Minn. Stat. § 573.02, in an amount in excess of $75,000.

### COUNT 4: MINN. STAT. § 573.02 – WRONGFUL DEATH CLAIM AGAINST HENNEPIN COUNTY, HENNEPIN HEALTHCARE SYSTEM, INC., AND DEFENDANTS SIMPLER, WILLIS, DEM, OMWERI, MARSHALL, BADE, AND TAYLOR

56. Paragraphs 1 through 31 are incorporated herein by reference as though fully set forth.

57. Based on the above factual allegations, Defendants have committed medical malpractice against Mr. Davidson. Specifically, Defendants owed Mr. Davidson a duty and standard of care, as recognized by the medical community, to regularly perform CIWA assessments, to measure his vital signs and recognize abnormal values, to provide treatment for his acute alcohol withdrawal, and to order Mr. Davidson to be taken the emergency room while he was experiencing a life-threatening hypertensive crisis. Defendants breached this standard of care and deprived Ms. Davidson of medical care that was necessary to save his life, resulting in his death.

58. Defendants caused Mr. Davidson's wrongful death through deliberate indifference to his serious medical needs (as alleged in Counts 1 and 2 above) and/or medical malpractice (as alleged in the preceding paragraph).

59. Defendants Hennepin County and/or Hennepin Healthcare System, Inc. are vicariously liable for the wrongful death caused by their employees/agents, the individual medical staff Defendants named herein.

60. As a direct and proximate result of Mr. Davidson's wrongful death, Mr. Davidson's heirs and next of kin have suffered damages enumerated in Minn. Stat. § 573.02, in an amount in excess of $75,000.

### COUNT 5: MINN. STAT. § 573.01-573.02 – SURVIVAL ACTION AGAINST ALL DEFENDANTS

61. Paragraphs 1 through 31 are incorporated herein by reference as though fully set forth.

62. Based on the above factual allegations, Defendants have committed negligence, medical malpractice, and deliberate indifference against Mr. Davidson, which caused and resulted in his wrongful death.

63. Defendants caused Mr. Davidson to suffer pre-death physical/emotional pain and suffering, wrongful death, and loss of life and related damages.

64. Defendant Hennepin County is vicariously liable for the wrongful death caused by its employees/agents, the individual Defendants named herein.

65. Defendant Hennepin Healthcare System, Inc. is vicariously liable for the wrongful death caused by its employees/agents, the individual Defendants named herein.

66. Notice is hereby given that Plaintiff intends to seek and recover all damages to the extent permitted under Minnesota state law, including, without limitation, pre-death pain and suffering damages as well as all other "damages suffered by [Mr. Davidson] . . . prior to [his] death." *See* Minn. Stat. § 573.02, subd. 1.

### RELIEF REQUESTED

**WHEREFORE, Plaintiff requests that this Court grant the following relief:**

a. Issue an order granting Plaintiff judgment against Defendants, finding that Defendants violated Mr. Davidson's constitutional rights under the Eighth/Fourteenth Amendments to the United States Constitution and that Defendants are liable to Plaintiff for all damages resulting from these violations, including damages for Mr. Davidson's conscious pain and suffering and loss of life and related damages;

b. Issue an order granting Plaintiff judgment against Defendants, finding that Defendants caused Mr. Davidson's wrongful death and that Defendants are liable to Plaintiff for all damages resulting from these violations including, without limitation, pecuniary loss suffered by the next of kin, Mr. Davidson's pre-death pain and suffering damages, and all other "damages suffered by [Mr. Davidson] . . . prior to [his] death." *See* Minn. Stat. § 573.02, subd. 1;

c. Award of compensatory damages to Plaintiff against all Defendants, jointly and severally;

d. Award of punitive damages to Plaintiff against all Defendants, jointly and severally;

e. Award of reasonable attorney's fees and costs to Plaintiff pursuant to 42 U.S.C. § 1988;

f. Award of such other and further relief as this Court may deem appropriate.

**THE PLAINTIFF HEREBY DEMANDS A JURY TRIAL.**

THE LAW OFFICE OF ZORISLAV R. LEYDERMAN

Dated: March 12, 2025

By: s/ Zorislav R. Leyderman
ZORISLAV R. LEYDERMAN
Attorney License No. 0391286
Attorney for Plaintiff
The Law Office of Zorislav R. Leyderman
80 South 8th Street, Suite 900
Minneapolis, MN 55402
Tel: (612) 876-6626
Email: zrl@ZRLlaw.com